**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL CASE NO.  3:10-CV-00445-GCM-DCK**

| | |
|---|---|
| SUHAILL VALLEJO,                          ) | |
|                                                       ) | |
|              **Plaintiff,**                        ) | **MEMORANDUM AND** |
|                                                       ) | **RECOMMENDATION** |
|         **v.**                                     ) | |
|                                                       ) | |
| **MICHAEL J. ASTRUE,**                 ) | |
| **Commissioner of Social Security,**  ) | |
|                                                       ) | |
|              **Defendant.**                       ) | |
| _____) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary

Judgment" (Document No. 9) and Defendant's "Motion For Summary Judgment" (Document No.

11).  This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C.

§636(b)(1)(B).  After careful consideration of the written arguments, administrative record, and

applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For

Summary Judgment" be denied; that Defendant's "Motion For Summary Judgment" be granted;

and that the Commissioner's decision be affirmed.

## I.  BACKGROUND

Plaintiff Suhaill Vallejo ("Plaintiff"), through counsel, seeks judicial review of an

unfavorable administrative decision on her application for disability benefits.  (Document No. 1).

On October 31, 2007, Plaintiff filed an application for a period of disability and disability insurance

benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq.* and for

supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383 *et seq.*,

alleging an inability to work due to a disabling condition beginning June 2, 2006.  (Transcript of the

Record of Proceedings ("Tr.") 11).  The Commissioner of Social Security (the "Commissioner" or

"Defendant") denied Plaintiff's application initially on February 21, 2008, and again after reconsideration on April 24, 2008. (Tr. 11). Plaintiff filed a timely written request for a hearing on April 28, 2008. (Tr. 11).

On July 13, 2009, Plaintiff appeared and testified at a hearing before Administrative Law Judge Wendell M. Sims ("ALJ"). (Tr. 11, 20-42). On September 30, 2009, the ALJ issued an unfavorable decision denying Plaintiff's claim. (Tr. 8-19). Plaintiff filed a request for review of the ALJ's decision on September 29, 2009, which was denied by the Appeals Council on July 20, 2010. (Tr. 1-3). The September 30, 2009, ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. Id.

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on September 10, 2010. (Document No. 1). Plaintiff's "Motion For Summary Judgment" (Document No. 9) and "Plaintiff's Memorandum In Support Of Motion For Summary Judgment" (Document No. 10) were filed January 31, 2011; and Defendant's "Motion For Summary Judgment" (Document No. 11) and "Memorandum In Support Of The Commissioner's Decision" (Document No. 12) were filed March 2, 2011. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between June 2, 2006, and the date of his

decision.[1]  (Tr. 11).  To establish entitlement to benefits, Plaintiff has the burden of proving that she

was disabled within the meaning of the Social Security Act.  Bowen v. Yuckert, 482 U.S. 137, 146

n.5 (1987).  The ALJ concluded that Plaintiff was not under a disability at any time from June 2,

2006, through the date of his decision, September 30, 2009.  (Tr. 11).

The Social Security Administration has established a five-step sequential evaluation process

for determining if a person is disabled.  20 C.F.R. § 404.1520(a).  The five steps are:

(1)     whether claimant is engaged in substantial gainful activity -
        if yes, not disabled;

(2)     whether claimant has a severe medically determinable
        physical or mental impairment, or combination of
        impairments that meet the duration requirement in § 404.1509
        - if no, not disabled;

(3)     whether claimant has an impairment or combination of
        impairments that meets or medically equals one of the listings
        in appendix 1, and meets the duration requirement - if yes,
        disabled;

(4)     whether claimant has the residual functional capacity
        ("RFC") to perform her/his past relevant work - if yes, not
        disabled; and

(5)     whether considering claimant's RFC, age, education, and
        work experience he/she can make an adjustment to other
        work - if yes, not disabled.

---

[1]  Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an:
inability to engage in any substantial gainful activity by reason of any medically determinable physical or
mental impairment which can be expected to result in death or which has lasted or can be expected to last
for a continuous period of not less than 12 months.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995)
(quoting  42 U.S.C. § 423(d)(1)(A)).

20 C.F.R. § 404.1520(a)(4)(i-v).  In this case, the ALJ determined at the fifth step that Plaintiff was not disabled.  (Tr. 18).

Specifically, the ALJ concluded at the first step that Plaintiff had not engaged in any substantial gainful activity since June 2, 2006, her alleged disability onset date.  (Tr. 13).  At the second step, the ALJ found that Plaintiff's multiple sclerosis, major depressive disorder, and general anxiety disorder were severe impairments.  (Tr. 13).[2]  At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1.  (Tr. 14).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform the full range of light work, with the following limitations:

> a sit/stand option, occasional climbing of stairs, no climbing of ladders, occasional balancing and work around hazardous machinery. Due to her major depressive disorder and general anxiety disorder, the claimant is limited to simple, routine repetitive tasks, only occasional interaction with the public in low stress environment. "Low" is defined as less than occasional, but more than none.

(Tr. 15).  In making his finding, the ALJ also considered "claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms," but concluded that they were "not credible to the extent [that] they are inconsistent with the above residual functional capacity assessment."  (Tr. 16).

At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work as an administrative assistant or an administrative clerk.  (Tr. 17).  At the fifth and final step, the ALJ

---

[2]  The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage.  See Bowen v. Yuckert, 482 U.S. 137 (1987).

concluded based on the testimony of a vocational expert and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 18). Specifically, the vocational expert testified that according to the factors given by the ALJ, occupations claimant could perform included coin machine coin collector, folder, and mail clerk. (Tr. 18). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between June 2, 2006, and the date of his decision, September 30, 2009. (Tr. 18).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ erred by failing to afford adequate weight to the opinion of the claimant's treating physician; (2) the ALJ erred by failing to ask a proper hypothetical question; (3) the ALJ improperly analyzed Plaintiff's mental residual functional capacity; and (4) the ALJ erred by failing to resolve the conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"). (Document No. 10). The undersigned will discuss each of these contentions in turn.

## A. Weight Given to Treating Physician's Opinion

In her first assignment of error, Plaintiff argues that the ALJ did not "comply with 20 C.F.R. §404.1527 by failing to accord adequate weight to the opinion of the claimant's treating physician." (Document No. 10, p.9). This regulation addresses the weight to be afforded to a treating physician's opinion, and provides in pertinent part:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight . . . We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. 1527(d)(2) (2011). The particular treating physician's opinion disputed here involves Dr. Eric Semeko's "Mental RFC [Residual Functional Capacity] Questionnaire" in which Dr. Semeko checked on a preprinted chart that Plaintiff was "unable to meet competitive standards" in the subcategory of "maintain attention for two hour segment." (Tr. 355). Plaintiff argues that an ALJ may only disregard the opinion of a treating physician if "there is persuasive contradictory evidence," and contends that the ALJ did not rely upon persuasive, contradictory evidence in making his determination to disregard Dr. Semeko's opinion. (Document No. 10, p.11) (citing Mitchell v. Schweiker, 699 F.2d 187, 187 (4th Cir. 1983)).

Defendant argues that the "ALJ evaluated the doctor's opinion, and determined that the assessment was inconsistent with the evidence in the record," which fulfilled the standard as set forth in 20 C.F.R. §404.1527(d). (Document No. 12, p.7). Defendant notes that Plaintiff's "persuasive contradictory evidence" standard (Mitchell v. Schweiker, 699 F.2d at 187) is no longer the applicable standard of analysis. Defendant observes that under the new regulation issued in 1991, "a treating physician's opinion is only entitled to controlling weight if it is supported by 'clinical and laboratory diagnostic techniques,' and is not inconsistent with other substantial evidence." (Document No. 12, pp.5-6) (citing 20 C.F.R. §404.1527(d)). Defendant argues that, "[h]ere, the ALJ cited to evidence that was inconsistent with Dr. Semeko's assessment, specifically Plaintiff's memory testing, which established that her memory was in the low-average range." (Document No. 12, p.6) (citing Tr. 17, 207-209).

The undersigned finds the Defendant's argument on this issue to be persuasive. SSR 96-2p, which expands upon 20 C.F.R. §404.1527 and was cited by Plaintiff in support of her contention,

provides an ALJ with guidance in making a determination about the weight to be given to a treating physician's opinion. SSR 96-2p provides in pertinent part:

> Controlling weight. This is the term used in 20 CFR 404.1527(d)(2) and 416.927(d)(2) to describe the weight we give to a medical opinion from a treating source that must be adopted. The rule on controlling weight applies when all of the following are present:
>
> 3. The adjudicator must find that the treating source's medical opinion is "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques. The adjudicator cannot decide a case in reliance on a medical opinion without some reasonable support for the opinion.
>
> 4. Even if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be "not inconsistent" with the other "substantial evidence" in the individual's case record.
>
> If any of the above factors is not satisfied, a treating source's opinion cannot be entitled to controlling weight. It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.

SSR 96-2p, "Giving Controlling Weight to Treating Source Medical Opinion," 1996 WL 374188 at *2 (1996) (emphasis added); See also, Ward v. Chater, 924 F.Supp. 53, 54 (W.D. Va. 1996) (recognizing that the standard for the weight afforded to a treating physician's opinion under 20 C.F.R. §404.1527(d) replaced the previous standard of persuasive, contradictory evidence). It appears that the ALJ relied upon substantial evidence within the record that was inconsistent with Dr. Semeko's opinion; thus, his decision to afford the opinion little weight is proper under 20 C.F.R. §404.1527.

The undersigned is also unpersuaded by Plaintiff's reliance on two cases previously remanded by this Court for an error pertaining to the weight afforded to treating physicians'

opinions. In <u>Miller v. Astrue</u>, this Court noted that "the undersigned finds the apparent lack of any weight or consideration given Dr. Carlton's February 22, 2007, opinion to be most relevant to this case. . . <u>Here, no reasons were given for the weight, if any, given to Dr. Carlton's February 2007 opinion</u>." <u>Miller v. Astrue</u>, 3:09-CV-351-RJC-DCK (W.D.N.C. Nov. 10, 2010) <u>adopted by Miller v. Astrue</u>, 3:09-CV-351-RJC-DCK (W.D.N.C. Dec. 1, 2010) (emphasis added). In <u>Miller</u>, the ALJ's failure to provide any reasons for the weight afforded to the treating physician's opinion did not meet the burden of 20 C.F.R. §404.1527(d)(2), which requires an ALJ to "always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. §404.1527(d)(2) (2011). Likewise, in <u>Dean v. Astrue</u>, this Court observed that "the ALJ discussed the treatments of Drs. Mitlehner and McCain at some length; <u>however, the ALJ decision fails to explain the weight given to the opinions of these doctors</u>." <u>Dean v. Astrue</u>, 3:08-CV-563-GCM-DCK (W.D.N.C. Dec. 22, 2010) <u>adopted by Dean v. Astrue</u>, 3:08-CV-GCM-DCK (W.D.N.C. Jan. 18, 2011) (emphasis added). In <u>Dean</u>, the ALJ failed to explain the weight afforded to the treating physician's opinion; the ALJ's omission violated the requirements of 20 C.F.R. §404.1527(d)(2).

In the case at hand, the ALJ appears to have relied upon substantial evidence within the record that was inconsistent with Dr. Semeko's conclusion that Plaintiff was incapable of maintaining attention for a two hour segment, and he adequately discusses his findings in his decision. (Tr. 355). In his decision, the ALJ noted that Dr. Semeko's conclusion did not accurately reflect the objective medical findings in the record, and explained his reasoning and the weight given to the opinion as follows:

> I considered the opinion of Dr. Semeko who opined that the claimant
> is unable to meet competitive standards with regard to maintaining

attention for a two-hour segment.  I give little weight to this statement because there is no evidence in the record to support this definitive assessment.  In fact, memory testing revealed that the claimant scored in the low average range.  However, I give some weight as to his opinion that the claimant has the mental abilities and aptitudes needed to do semiskilled or skilled work and the abilities and aptitude needed to interact appropriately with the general public.

(Tr. 17) (emphasis added).  Based upon the foregoing, it appears that the ALJ complied with the regulatory standard and its requirement that a treating source's opinion be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not [be] inconsistent with the other substantial evidence in your case record."  20 C.F.R. §404.1527(d)(2) (1991).

## B.  Hypothetical Question Posed to the VE

### 1. Definition of "Low" in the Hypothetical

Next, Plaintiff asserts that the ALJ "failed to ask a proper hypothetical question." (Document No. 10, p.12).  Specifically, Plaintiff argues that the ALJ's hypothetical was improper in two ways. First, it is alleged that "[t]he ALJ did not include the definition of "low" in his hypothetical question to the VE." (Document No. 10, p.16).  In support of this contention, Plaintiff relies on 4th Circuit precedent, which held that "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." (Walker v. Brown, 889 F.2d 47, 50 (4th Cir. 1989));  (Document No. 10, p.15). Plaintiff contends that "[b]ecause the ALJ failed to define "low" in his hypothetical question there is no way to know if the VE applied the same definition when responding." (Document No. 10, p.15).

Defendant argues that "[t]he ALJ is given great latitude in posing hypothetical questions, and is free to accept or reject conditions assumed in questions as long as there is substantial evidence to support the ultimate determination." (Document No. 12, p.10) (citing <u>France v. Apfel</u>, 87 F.Supp.2d 484, 490 (D. Md. 2000)). Further, Defendant also notes that Plaintiff's counsel was present at the hearing, and "error can be cured by Plaintiff's attorney's own question." (Document No. 12, p.10) (citing <u>Shively v. Heckler</u>, 739 F.2d 987, 990-991 (4th Cir. 1984)). In addition, Defendant notes:

> In responding to [the] hypothetical question, [which included a restriction to work in a low-stress environment,] the vocational expert did not request any clarification on what the ALJ meant by the term 'low-stress work environment.' Similarly, counsel [for Plaintiff] did not request any clarification from the ALJ on the meaning of the term, nor did he ask the vocational expert any follow-up questions regarding this limitation when he questioned her [the VE] at the hearing.

(Document No. 12, p.10). Therefore, Defendant concludes that "there has been no showing that there was an inconsistency between how the ALJ defined the term in his RFC finding and how the vocational expert understood the term at the hearing." (Document No. 12, p.10).

The undersigned finds Defendant's argument on this issue to be persuasive. Plaintiff has failed to cite to any regulatory authority which requires the ALJ to include within his hypothetical to the VE every element contained within Plaintiff's RFC. The 4th Circuit has recognized that the ALJ has "great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." <u>Koone v. Apfel</u>, 166 F.3d 1209 (4th Cir. 1999); 1999 WL 7864 at *5 (1999).

In addition, the record does not indicate that the VE misunderstood the meaning of the term "low," as used by the ALJ in his hypothetical question. After the ALJ explained the hypothetical to the VE and asked her whether there were any "jobs existing in the general area in which this Claimant lives or several regions of the country that she could do with these limitations," the VE responded, "I can give you some examples of that, Your Honor. There's an occupation of a coin machine collector. It's light and unskilled . . .there would be a light unskilled job of folder . . . there would be light unskilled mail clerk . . ." (Tr. 39). The undersigned highlights both that the VE did not request any clarification before answering and that her response does not evidence any confusion or lack of clarity relating to Plaintiff's limitations as described within the ALJ's hypothetical.

Since Plaintiff's counsel did not raise any objections during the hearing or request any type of clarification of the term "low," and Plaintiff has not presented any evidence within her brief to support the claim that "there was an inconsistency between how the ALJ defined the term in his RFC finding and how the vocational expert understood the term at the hearing," the undersigned finds the Plaintiff's contention to be without merit.

## 2. Frequency of a Sit/Stand Option

Plaintiff also contends that the ALJ failed to comply with SSRs 83-12 and 96-9p, which both address an ALJ's explanation of the frequency with which an individual will need to alternate between sitting and standing. (Document No. 10, p.16). In pertinent part, SSR 83-12 provides the following guidance to an ALJ when making a disability determination for a Plaintiff who requires a sit/stand option:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and

standing . . . [M]ost jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

SSR 83-12, "Capability To Do Other Work," 1983 WL 31253 at *4 (1983). In addition, Plaintiff

relies on SSR 96-9p, which specifically addresses the "alternate sit/stand option:"

An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p, "Determining Capability To Do Other Work," 1996 WL 374185 at *7 (July 2, 1996).

Plaintiff argues that, "[t]his Ruling is very clear as to the ALJ's requirement to be specific in regards

to the frequency of the sit/stand option. It would be illogical for the requirement to be any less

specific for light unskilled work." (Document No. 10, p.17).

To further support this contention, Plaintiff references a 10th Circuit opinion addressing an

ALJ decision that limited a claimant to "light work which included a limitation to allow . . . [for]

brief changes of position" (Document No. 10, p.18); the court ruled that "[p]recisely how long a

claimant can sit without a change in position is also relevant to assumptions whether he can perform

light work." (Document No. 10, p.18) (citing Vail v. Barnhart, 84 Fed. Appx. 1, 2-3 (10th Cir.

2003)). Plaintiff notes that the 10th Circuit then determined that "the ALJ made a critical omission

in his analysis by not properly defining how often the claimant would need to change positions." (Document No. 10, p.18). Plaintiff argues that since she was limited to the full range of light work activity by the ALJ with a limitation for a sit/stand option (Tr. 17), the ALJ erred by not specifying the frequency necessitated by that limitation. (Document No. 10, p.18).

Defendant argues that the ALJ met the requirements of SSR 83-12, and also contends that SSR 96-9p does not apply in Plaintiff's case. (Document No. 12, p.11). Defendant notes that SSR 83-12 "discusses situations where a claimant's exertional limitations fall within a range of work, and sets forth when the ALJ can rely on the Medical-Vocational Guidelines and when testimony from a vocational expert was required to carry the Commissioner's burden at step five, and thus the ALJ complied with SSR 83-12." (Document No. 12, p.11) (citing Tr. 18). Defendant then argues that "SSR 96-9p . . . applies only to cases where the ALJ has to determine the claimant's capability to perform other work where her RFC is for less than a full range of sedentary work. Here, however, Plaintiff's RFC was for a range of light work, and thus SSR 96-9p does not apply." (Document No. 12, p.11) (citing Tr. 15).

Finally, Defendant addresses the case law presented by Plaintiff in support of her contention that the ALJ committed reversible error by failing to specify the frequency associated with her sit/stand option. Defendant distinguishes Plaintiff's most relevant authority from Plaintiff's own case by noting that the 10th Circuit remanded the case based upon more than a mere failure by the ALJ to specify the frequency of claimant's sit/stand option. (Document No. 12, p.11). Defendant notes the following relevant summary of Vail v. Barnhart:

> [W]hile the claimant in that case had an RFC for less than a full range of light work with a limitation to brief changes in position, and the Court noted the ALJ's failure to define how often the claimant needed to change positions in the decision to remand, that was not the

sole error the Court identified in the ALJ's five-step determination. To the contrary, the Court stated that the ALJ's hypothetical question failed to set forth whether the claimant was able to perform his past relevant work and that he was over fifty, and the ALJ failed to acknowledge in the hearing decision whether and how he evaluated the vocational expert's negative responses. The Court also stated that there was still an outstanding issue of whether the claimant could hold any job that he was able to obtain based on the vocational expert's qualified response.

(Document No. 12, p.12) (citing Vail v. Barnhart, 84 Fed. Appx. 1 (10th Cir. 2003)). Defendant concludes that "it is unclear what the Court's decision would have been if the sole issue . . . was the frequency that the claimant needed to change positions." (Document No. 12, p.12).

The undersigned finds the Defendant's argument to be persuasive. As Defendant accurately noted, SSRs 83-12 and 96-9p are not relevant in Plaintiff's present case. The last sentence in the pertinent portion of SSR 83-12 states the following standard for addressing claimants with sit/stand limitations: "In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base." SSR 83-12, 1983 WL 31253 at *4 (1983). The ALJ complied with this regulation by obtaining the testimony of a VE during the hearing. (Tr. 38-41).

Likewise, SSR 96-9p does not apply in Plaintiff's case. In pertinent part, SSR 96-9p provides:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in

> these situations to consult a vocational resource in order to determine
> whether the individual is able to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185 at *7 (1996) (emphasis added). The undersigned notes that this particular regulation expressly addresses claimants capable of performing only sedentary work, while the ALJ in the present case determined that Plaintiff was capable of performing the full range of light work. (Tr. 15).

When addressing a similar issue, the Eleventh Circuit found that, in the case of a Plaintiff with an RFC for light work with a sit/stand limitation, "although the ALJ failed to specify the frequency that [the claimant] needed to change his sit/stand option, the reasonable implication of the ALJ's description was that the sit/stand option was at [the claimant's] own volition." Williams v. Barnhart, 140 Fed. Appx. 932, 2005 WL 1943186 at *4 (11th Cir. 2005); See Smith v. Astrue, 2010 WL 3749209 at *19 (N.D. Fla. 2010) (acknowledging that SSR 96-9p does not apply to light work and noting that an ALJ's failure to state a frequency in such a case is not a basis for relief); Taylor v. Astrue, 2009 WL 3232135 at *8 (M.D. Fla. 2009) (holding that "it was not necessary for the ALJ to incorporate additional 'details' about Plaintiff's need for a sit/stand option" when Plaintiff's RFC was for light work). Thus, this particular portion of SSR 96-9p is not applicable to Plaintiff's situation, and the ALJ was under no specific duty to define the frequency for Plaintiff's "occasional . . . sit/stand option." (Tr. 38).

In addition, the undersigned finds the Defendant's arguments as to the case law relied on by Plaintiff in support of her contention to be persuasive. The undersigned notes that two of Plaintiff's cited cases address claimants assigned to unskilled sedentary work with sit/stand limitations, which both fall within the parameters of SSR 96-9p, unlike the Plaintiff's present case. (Document No.

10, pp.17-18) (citing <u>Catrejon v. Apfel</u>, 131 F.Supp.2d 1053, 1057 (E.D. Wis. 2001); <u>Armer v. Apfel</u>, 216 F.3d 1086 (table), 2000 WL 743680 (10th Cir. 2000)). Plaintiff's other authority, <u>Vail v. Barnhart</u>, is not a reversal based solely upon the ALJ's failure to specify a frequency for the claimant's sit/stand limitation. In the 10th Circuit's conclusion, the Court noted the following:

> Not only did the ALJ's hypothetical question to the VE lack multiple pieces of critical information, but the VE's qualification of her statements in the record suggests that Vail may not actually be able to hold the positions the ALJ described because he would require accommodation not available to a claimant with his characteristics.

<u>Vail v. Barnhart</u>, 84 Fed.Appx. 1 (10th Cir. 2003), 2003 WL 22810457 at *6 (C.A.10 (Okla.)). Based upon the court's reasoning, it is evident that the ALJ in <u>Vail</u> made multiple reversible errors that clearly violated the Social Security Regulations; here, however, Plaintiff has failed to identify a particular regulation or standard that the ALJ failed to comply with. Thus, the present case is distinguishable.

Based upon the foregoing, it appears that the ALJ relied upon substantial evidence within the record when making his determination about Plaintiff's RFC and in providing the hypothetical to the VE. The VE's response is clear and definite, and it does not evidence any confusion or misunderstanding. In addition, Plaintiff has failed to cite to any regulation or authority that clearly requires the ALJ to list a frequency for a sit/stand option when a claimant is limited to the full range of light work; thus, the undersigned will not recommend remand based upon this issue.

### C. ALJ's Analysis of Plaintiff's Mental Residual Functional Capacity

Next, Plaintiff argues that the ALJ erred "in failing to properly analyze [Plaintiff's] mental residual functional capacity due to ignoring record evidence and failing to consider her GAF [Global Assessment of Functioning] score history." (Document No. 10, p.18). In particular, Plaintiff

contends that "[w]hen present in a claim file[,] GAF scores are critical in the required assessment of mental activities required for work under SSR 96-9p . . . A proper assessment under 96-9p cannot be done without weighing and properly considering all GAF scores in a claimant's file." (Document No. 10, p.19). Plaintiff points to two GAF scores contained within the record in support of her contention, which read:

      6/05/2008     GAF 50
      6/30/2009     GAF 50

(Tr. 313, 353). Plaintiff notes that the ALJ "never even mentions the GAF scores let alone [takes them] into consideration when considering [Plaintiff's] RFC." (Document No. 10, p.19). Plaintiff also observes that a GAF score of 50 can be viewed as the benchmark score for employability. (Document No. 10, p.19) (citing Pate-Fires v. Astrue, 564 F.3d 935 (8th Cir. 2009)). Plaintiff concludes that "[e]ven considering [Plaintiff's] highest GAF scores between June of 2008 and June of 2009 her average GAF score could not be over 53. This indicates that [Plaintiff] has 'serious symptoms . . . or any serious impairment in social, occupational, or school functioning . . .' and is 'unable to keep a job." (Document No. 10, pp.19-20) (citing Diagnostic and Statistical Manual of Mental Disorders, 32 (4th Edn. Am. Psychiatric Ass'n 1994).

Defendant argues that the ALJ properly analyzed Plaintiff's mental residual functional capacity, and contends that the ALJ based his determination on substantial evidence within the record. (Document No. 12, p.18). First, Defendant again highlights that SSR 96-9p does not apply to Plaintiff's case, as she "was not limited to less than a full range of sedentary work." (Document No. 12, p.18). In addition, Defendant argues that, contrary to Plaintiff's assertion, "the GAF score is intended to be used to make treatment decisions, and may have little to no bearing on a claimant's occupational functioning." (Document No. 12, p.18) (citing Kornecky v. Commissioner of Social

Security, No. 04-2171, 2006 WL 305648 at *13 (6th Cir. February 9, 2006)). Defendant concludes by arguing that "two isolated GAF findings, twelve months apart, fail to demonstrate that Plaintiff was disabled, as the regulations provide that with respect to the impairment there is a specific durational requirement." (Document No. 12, p.21) (citing 20 C.F.R. §404.1509).

The undersigned finds the Defendant's argument on this issue to be persuasive. Most important, the undersigned notes that the ALJ appears to have relied upon substantial evidence within the record when making his determination about Plaintiff's mental residual functional capacity. For example, Dr. Semeko's treatment notes within the record highlight that, on January 8, 2006, he observed that Plaintiff was "non complian[t] with therapy, she forgets to take her medication. Sleep is good. She does not feel depressed." (Tr. 310). Dr. Semeko also noted that Plaintiff's attitude was "fair," her thought process was "normal" and her judgment/insight was "low-fair." (Tr. 310). On June 5, 2008, when Dr. Semeko assigned Plaintiff's first GAF score of 50, he noted that Plaintiff's mood was "depressed" and her affect was "constricted." (Tr. 312). Dr. Semeko also increased her prescription for Zoloft during that visit. (Tr. 313). A few months later, on October 7, 2008, Dr. Semeko noted that "Mood is not depressed. She reports rather 'elevated' mood." (Tr. 315). During that visit, Dr. Semeko also noted that Plaintiff's attitude was "pleasant/cooperative," her mood was "euthymic," and her thought process was "logical/goal directed and normal." (Tr. 315).

In addition, the RFC Questionnaire that Plaintiff points to as the source of a second GAF score of 50 also contains the following relevant information: "She was seen on 6/5/08[,] 7/16/08[,] 10/7/08[,] 01/6/09[,] and 6/30/09. Treated with Zoloft for depression. She showed moderate response. She denies presence of side effect." (Tr. 353). Dr. Semeko also noted that Plaintiff's

highest GAF score during her five visits was a 60. (Tr. 353). Based upon this information within the record, the ALJ concluded that:

> Due to her major depressive disorder and general anxiety disorder, the claimant is limited to simple, routine repetitive tasks, only occasional interaction with the public in a low stress environment.

(Tr. 17).

The undersigned finds that the ALJ based this decision on substantial evidence within the record. The ALJ directly cited within his opinion to Dr. Semeko's RFC, which contained information about Plaintiff's GAF scores (Tr. 17); thus, it can be inferred that the ALJ also considered the Plaintiff's GAF scores, but determined that the score was not dispositive when considered along with other substantial, medical evidence within the record. In addition, the cases relied upon by Plaintiff in support of her contention that a GAF score of 50 is a benchmark for employability are unpersuasive.

A review of the facts in Plaintiff's most relevant case, Pates-Fires v. Astrue, reveals that the claimant in that case was diagnosed with eleven scores below a GAF score of 50, with a lowest score of 10, over several years. Pates-Fires v. Astrue, 564 F.3d 935, 944 (8th Cir. 2009). However, in this case, Plaintiff's lowest score was 50, while her highest score was 60. (Tr. 353). As Defendant notes, a GAF score is "merely an assessment of functioning 'at the time of evaluation.'" (Document No. 12, p.18) (citing Diagnostic and Statistical Manual of Mental Disorders - Text Revision 33 (4th ed. 2000)). While the claimant in Pates-Fires was able to demonstrate a sustained, severe mental disability through the use of multiple GAF scores over a period of several years, in the present case Plaintiff can only point to two instances in which her GAF scores were at 50. When considered in light of Dr. Semeko's treatment notes, the GAF scores fail to provide any meaningful description or detail about Plaintiff's condition. Therefore, the undersigned finds that the ALJ relied upon

substantial evidence within the record, particularly Dr. Semeko's ongoing treatment notes and evaluations, when determining that Plaintiff's major depressive disorder and general anxiety disorder were not so severe as to render Plaintiff fully disabled from all employment.

### D. The VE's Testimony

Finally, Plaintiff argues that the ALJ "violated SSR 00-4p by failing to resolve the conflict between the VE's testimony and the DOT." (Document No. 10, p.20). In particular, Plaintiff contends that the VE's identification of mail clerk, which is a reasoning level 3 position, "conflicts with the ALJ's prescribed limitation that [Plaintiff] is limited to simple, routine repetitive tasks." (Document No. 10, p.23). Plaintiff argues the VE's testimony that Plaintiff could work as a mail clerk conflicted with the ALJ's hypothetical, and that "[b]ecause the ALJ failed to question the VE about the inconsistency before relying on the VE's testimony, the Court should find the ALJ erred." (Document No. 10, p.23).

Defendant argues that "the mail clerk job . . . might not be consistent with the restrictions set out in the hypothetical question," but contends that "the coin machine collector and folder positions . . . are consistent with the restrictions in the hypothetical and the ALJ's RFC finding, and they exist in significant numbers to satisfy the Commissioner's burden." (Document No. 12, p.13 n.3). Defendant notes that reasoning level two positions in the DOT refer to "'detailed but uninvolved' instructions . . . [that] does not necessarily encompass more than 'simple, routine, repetitive tasks.'" (Document No. 12, p.14). Defendant argues that all reasoning level two jobs do not necessarily involve more than the "simple, routine, repetitive tasks" required by Plaintiff's RFC. In support of this contention, Defendant cites to several cases in which various courts have agreed that "occupations with a DOT reasoning level of two are not inconsistent with an RFC limiting the individual to performing simple, repetitive tasks." (Document No. 12, pg.15) (citing Hackett v.

Barnhart, 395 F.3d 1168 (10th Cir. 2005) (level two reasoning consistent with RFC for simple, routine tasks); Burnette v. Astrue, 2009 WL 863372 at *5 (E.D.N.C. March 24, 2009) (ALJ's limitation to "short, simple, routine, repetitive tasks" is not inconsistent with jobs with a reasoning level of 2)).

The undersigned agrees with the Defendant. The ALJ complied with the requirements set forth in SSR 00-4p that the ALJ has "an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT." SSR 00-4p, "Use of Vocational Expert Evidence," 2000 WL 1898704 at *4 (December 4, 2000). After the VE provided her response to the ALJ's hypothetical, the ALJ questioned the VE, "[i]s the testimony you provided consistent with the information found in the Dictionary of Occupational Titles and it's companion publication Selected Characteristics of Occupations defined in the revised DOT?" (Tr. 39-40). The VE then confirmed her testimony was consistent with the DOT. (Tr. 40).

The undersigned also finds that at least two of the positions identified by the VE, including the reasoning level two jobs of coin machine collector and folder, were properly suited to the "simple, routine, repetitive tasks" limitation contained in the ALJ's hypothetical. The undersigned is persuaded that the holding in Meissl v. Barnhart, as cited by the Defendant, is applicable and contains the following pertinent insight:

> The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions . . . The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one- or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific thinking ... apprehend the most abstruse classes of concepts" at level six). DOT at 1010-1011. To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or

> higher are encapsulated within the regulations' use of the word "detail" . . .
>
> Even more problematic for Meissl's position is that she ignores the qualifier the DOT places on the term "detailed" as also being "uninvolved." This qualifier certainly calls into question any attempt to equate the Social Security regulations' use of the term "detailed" with the DOT's use of that term in the reasoning levels. Instead of simply seeking to equate the two scales based on the serendipity that they happen to employ the same word choice, a much more careful analysis is required in comparing the claimant's RFC with the DOT's reasoning scale.

Meissl v. Barnhart, 403 F.Supp. 2d 981, 984 (C.D.Cal., 2005). The undersigned notes that other district courts have also arrived at a conclusion similar to that of the Meissl court, finding that a limitation of simple, routine, repetitive work tasks includes reasoning level 2 jobs. See, Burnette v. Astrue, 2009 WL 863372 at *5 (E.D.N.C. 2009) (finding that the Meissl approach is appropriate); See also, Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding that a reasoning level 2 job was consistent with Plaintiff's RFC limitation to simple, routine work tasks); Flaherty v. Apfel, 182 F.Supp.2d 824, 850s-851 (D.Minn. 2001) (holding that reasoning level 2 jobs did not conflict with the Plaintiff's RFC limitation to "simple, repetitive, routine, concrete, tangible tasks"). Based upon the foregoing, the undersigned finds that the VE identified at least two positions that Plaintiff was capable of performing, and the ALJ reasonably relied upon this testimony in making the determination that Plaintiff was not entirely disabled from all work.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart,

434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 9) be **DENIED**; Defendant's "Motion For Summary Judgment" (Document No. 11) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Graham Mullen.

**IT IS SO RECOMMENDED**.

Signed: August 4, 2011

David C. Keesler
United States Magistrate Judge